[Civ. No. 5251.  First Appellate District, Division Two.—October 16, 1925.]

## D. R. McNEILL, Respondent, v. JOHN S. PAPPAS, Appellant.

[1] SPECIFIC PERFORMANCE—VENDOR AND VENDEE—CONTRACTS—PER-FORMANCE — TIME—STATUTE—CUSTOM—EVIDENCE.—Where a contract for the sale and purchase of real estate was silent as to the time within which the buyer had to perform, the statute on that subject entered into and became a part of the contract; and in an action by the buyer for specific performance of such contract, the court properly refused to permit the seller to show that it is the universal custom with all escrow companies to fix a time limit for performance.

[2] ID.—PERFORMANCE—TIME—FINDING—APPEAL.—In this action by a purchaser for specific performance of a contract to buy and sell real estate, the finding of the trial court that the plaintiff performed within a reasonable time is binding on appeal, where the trial court had all of the evidence before it and had the power to determine the point.

[3] ID.—CONTRACTS — MUTUALITY.—A contract to buy and sell real estate, which allowed the buyer a reasonable time in which to determine the validity of a certain restriction against the property and also whether he would accept the property subject to an existing lease, became mutually binding on the parties when the buyer gave notice to the seller within a reasonable time that he would accept a conveyance notwithstanding the restriction and lease.

[4] ID.—PLEADING—NOTICE—INSUFFICIENCY OF DENIAL.—In an action for specific performance of such contract, where the buyer pleaded in his complaint the giving of notice to defendant of his acceptance of the contract subject to a restriction and a lease, a denial in defendant's answer that "he has not sufficient knowledge upon which to base a belief, and basing his denial on that ground denies that plaintiff notified defendant or any person for him that he accepted the contract, subject to restrictions and subject to store lease," was insufficient to meet plaintiff's allegation.

[5] ID.—DELIVERY OF DEED — VALIDITY OF CONTRACT.—The fact that the deed to the property was not delivered on the day the contract was signed, and that the contract recited that the seller

---

1.  See 25 Cal. Jur. 493;  27 R. C. L. 317.
3.  See 25 Cal. Jur. 515.

"hereby hands" to the escrow-holder a deed to the property, did not render the contract void.

[6] Id.—Contracts—Construction.—In construing contracts it is a rule that several contracts relating to the same matters between the same parties and made as part of substantially one transaction are to be taken together.

[7] Id.—Performance—Evidence.—In such action, the evidence shows that plaintiff's performance of the contract in question was full and substantial.

(1) 17 C. J., p. 512, n. 55, p. 513, n. 66; 39 Cyc., p. 1332, n. 7. (2) 4 C. J., p. 876, n. 78. (3) 39 Cyc., p. 1207, n. 39. (4) 31 Cyc., p. 200, n. 5. (5) 13 C. J., p. 528, n. 50; 21 C. J., p. 865, n. 2. (6) 13 C. J., p. 529, n. 52; 21 C. J., p. 880, n. 62.

APPEAL from a judgment of the Superior Court of Los Angeles County. Stanley Murray, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. H. De La Monte and Walter W. Little for Appellant.

Alex W. Davis, Pierce Works and Kemp, Mitchell, Silberberg & Davis for Respondent.

STURTEVANT, J.—This is an action brought by the plaintiff to compel the specific performance of an alleged contract to sell and buy a piece of real estate. The case was tried in the lower court without the intervention of a jury, the judgment went for the plaintiff and the defendant has appealed under section 953a of the Code of Civil Procedure.

Prior to November 23, 1921, the defendant was the owner of the real estate. Some of the deeds executed by his grantors contained certain restrictions. Some of the real estate consisted of improved property that was leased to one George Kolovos. Generally speaking, the plaintiff had some information regarding the existence of the restrictions mentioned and of the existence of the lease mentioned, but he was not fully informed regarding the facts and the law. With the circumstances so existing certain negotiations were

6. See 6 Cal. Jur. 299; 6 R. C. L. 851.

had between the plaintiff and the defendant. Writings were executed which constituted, firstly, an escrow and, secondly, an executory contract to buy and sell the real estate. Taking the second theory the plaintiff pleaded meticulously the alleged contract to buy and sell. In so doing he pleaded *in haec verba* a writing signed by himself on the twenty-third day of November, 1921, and also a writing signed by the defendant on the same date. Furthermore, he pleaded a writing dated January 14, 1922, in which he tendered the cash payment and the note and mortgage, the consideration designated in the executory contract. The first two papers were addressed by the makers to the Bank of Italy. At the same time the Bank of Italy issued to the defendant a receipt for: (1) the defendant's title certificate; (2) the defendant's copy of the lease above mentioned; and (3) an insurance policy. The defendant answered and after the trial was had the trial court made findings in favor of the plaintiff which followed closely the language contained in the plaintiff's complaint and which found every issue in favor of the plaintiff.

[1] During the trial the defendant contended that any performance or tendered performance on the part of the plaintiff came too late; that the plaintiff should have completed his performance within thirty days after November 23, 1921. In presenting this contention the defendant attempted to show that it is the universal custom with all escrow companies to fix a time limit; that that time limit is ordinarily fifteen days, and, in rush periods, thirty days; and that it is the universal custom to permit the parties to draw down their papers upon demand, after the expiration of such time. There is no claim that in any writing signed by either of the parties a time limit of fifteen days, thirty days, or any other length of time for the consummation of the executed contract was inserted. Under these facts the defendant was not authorized to introduce evidence concerning a custom. (Code Civ. Proc., sec. 1870, subd. 12.) As the writings were silent as to the time of performance the statute on that subject entered into and became a part of the contract. (Civ. Code, sec. 1657; *Standard Box Co.* v. *Mutual Biscuit Co.,* 10 Cal. App. 746 [103 Pac. 938].) The trial court did not err in refusing

74 Cal. App.—38

the evidence regarding the existence of the custom mentioned.

[2]  The defendant contends that if we assume that the plaintiff should have done and performed all things by him to be done and performed, within a reasonable time, nevertheless, his performance was too late because he did not act within a reasonable time.  Whatever merit that point might have had in the trial court it has no standing in this court because the trial court had all of the evidence before it and had the power to determine the point.  It did so; and, among other things, it found the amount of the payments, the date of the payments, and each other item of performance, and then it made a finding: "That said payments and performance were made by the plaintiff within a reasonable time.  That plaintiff has duly performed all of the conditions of said contract on his part to be performed."

The writing which the plaintiff signed and delivered to the Bank of Italy contained a passage as follows:

"The undersigned hereby hands you $500.00 and upon completion of search will hand you $5500.00 together with a mortgage covering the hereinafter-mentioned property for $5,500.00 dated Dec. 1, 1921, due on or before two years from date, with interest at 7%, payable quarterly, all of which you are to deliver to John S. Pappas when you can procure for me a continuation guarantee of title covering (describing property).

"I am to be allowed a reasonable time in which to determine the validity of a certain restriction existing against said property and also whether I will accept said property subject to the store lease now existing against same.

"I agree to pay.  New owner fee, Fee for showing mortgage, Fee for recording mortgage, Fee for recording deed, $1.10 internal revenue stamps on note, Mtgee. clause on insurance, Pro rate insurance, rents and taxes to date of filing deed.  Endorse on note interest as having been paid to date of filing of deed."

The writing which the defendant signed and delivered to the Bank of Italy contained a passage as follows:

"The undersigned hereby hands you grant deed from John S. Pappas in favor of D. R. McNeill covering (describing same property) which you are authorized to deliver

to said grantee when you can procure for me the sum of Six Thousand ($6,000.00) Dollars in cash and a mortgage covering the above mentioned property securing a note for Five Thousand Five Hundred ($5,500.00) Dollars, dated December 1, 1921, due on or before two years from date with interest at seven per cent payable quarterly.

"I agree to deliver the above mentioned property, free and clear of all incumbrances except second half taxes for 1921–22, conditions, restrictions and reservations of mortgage.

"It is understood and agreed that D. R. McNeill shall be allowed a reasonable time in which to determine the validity of the restrictions recorded in Book 2133, Page 207 of Deeds and also to determine whether he desires to accept the property subject to the store lease existing between John S. Pappas and Geo. Kolovos.

"From money due me in this escrow you are authorized to pay the following fees:

"Fee for certificate of title. $11.50 internal revenue stamp on deed. Fee for drawing deed. Insurance transfer fee and your escrow fee. Pay D. M. Anderson of 1902 Sunset Blvd. $575.00 Commission."

[3] The appellant calls to our attention these passages and asserts that the contract was not mutual. The point at first seems to be well made, but when it is considered in the light of the record it is entirely without merit. On November 23, 1921, we may assume that the parties did not intend to be bound as contracting to buy and sell, until the plaintiff could examine the restrictions and lease above mentioned. However, the plaintiff made that examination and within fifteen days notified the defendant in writing that he would accept a conveyance notwithstanding the restrictions and the lease. That notice was in the form of a letter dated December 8, 1921. In his complaint the plaintiff pleaded the giving of said notice of acceptance. In his answer the defendant denied that allegation in the following words: "Defendant further alleges that he has not sufficient knowledge upon which to base a belief, and basing his denial on that ground denies that plaintiff notified defendant or any person for him that he accepted the contract, subject to restrictions and subject to store lease."

[4] That denial was insufficient to meet the plaintiff's al-

legation. Moreover, Mr. Davis, who was acting as the plaintiff's attorney, orally notified Mr. Stannard, the escrow agent of the Bank of Italy, that the plaintiff examined the restrictions and lease and accepted the same. That conversation was held on the fifteenth day of December, 1921. And, as shown above, the trial court made a finding that these notices were given within a reasonable time.

Points 3, 5, and 6 are different methods of attacking the contract to buy and sell on the ground that the contract was not mutual. Conceding that it was not mutual as a binding contract on both parties on November 23, 1921, nevertheless, when the notice of acceptance was given by the plaintiff on December 8, 1921, from that date on the contract became and was binding on both the plaintiff and the defendant. (*Spires* v. *Urbahn,* 124 Cal. 110, 111 [56 Pac. 794].)

[5] The appellant also contends that the alleged contract is void for uncertainty, indefiniteness, and incompleteness. Under this head the appellant argues that the deed was not executed until after November 23, 1921, and therefore was not delivered to Mr. Stannard on that day. That argument might be material if we were considering the case as an escrow, but we are not. The appellant further contends that the defendant had not agreed to do anything and in this behalf appellant emphasizes the language "hereby hands," and argues that the defendant's writing addressed to the Bank of Italy meant nothing. [6] In construing contracts it is a fundamental rule that several contracts relating to the same matters between the same parties and made as part of substantially one transaction are to be taken together. Applying that rule to the facts of this case the court is not at all in doubt as to what the parties were attempting to state in their contract.

[7] The appellant makes the further point that "mutuality must exist at the inception of the contract. But want of mutuality may be and is only removed by full and substantial performance of the contract." The plaintiff executed the note and mortgage, which the contract required him to execute, on December 23, 1921. On the same date he delivered to the Bank of Italy a check for the moneys called for under the contract. That check was not paid, but on December 30th another check was delivered that was

paid on January 2d. As stated above, the trial court found that all acts done and performed by the plaintiff were done within a reasonable time. In presenting the point now under discussion, the appellant places much emphasis upon the fact that the plaintiff's performance must be full and substantial, but the answer is that the record before us shows that said performance was full and substantial. Even though the check delivered on December 23, 1921, had never been delivered, and even though the check delivered on December 30th had not been delivered at that time, but cash in a sack had been delivered and was on deposit on January 2, 1922, we cannot see wherein the appellant would have been injured or that the trial court would have worded the finding regarding reasonable time any differently.

The last point made by the appellant is closely akin. The appellant states "Necessity of strict compliance with conditions of escrow." As we have stated above, we find nothing in the record indicating noncompliance in any respect whatsoever.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 14, 1925.