(February 4, 1916.)

ESTELLE TRASK and GEORGE R. TRASK, Husband
and Wife, Respondents, v. SUCCESS MINING COM-
PANY, a Corporation, Appellant.

[155 Pac. 288.]

TITLE BY ADVERSE POSSESSION—INSTRUCTIONS—STATUTORY CONSTRUC-
TION—ADVERSE POSSESSION—WHAT CONSTITUTES—IMPROVEMENTS—
EVIDENCE.

1. Where one conveys title to land by deed, the legal title vests
in the grantee, and if the grantor continues in possession after-
ward, his possession will either be that of tenant or trustee of the
grantee, and he will be regarded as holding the premises in sub-
serviency to the grantee, and nothing short of an explicit disclaimer
of such relation and a notorious claim of right in himself will be
sufficient to change the character of its possession and render it
adverse to the grantee.

2. If the acts of the adverse claimant in regard to the land so
conveyed were sufficient to give the grantee notice that the defendant
was claiming title thereto adversely to the grantee, that is sufficient.
Either constructive or actual notice is sufficient.

3. *Held*, that the court did not err in giving instructions 3 and 7.

4. *Held*, that the court erred in giving instruction No. 5 and
in refusing to give requested instruction No. 7a.

5. It is provided, among other things, by sec. 4043, Rev. Codes,
that for the purpose of constituting adverse possession by a person
claiming title not founded upon a written instrument, judgment or
decree, land is deemed to have been possessed and occupied, first
where it has been protected by a substantial inclosure, and, second,
where it has been usually cultivated or improved.

[As to acts equivalent to notice of adverse possession, see note in
28 Am. St. 159.]

6. The requirement of that statute that the land be "usually
cultivated or improved" means that it should be cultivated or im-
proved in the manner and to the extent usual in the case of similar
property, and in case of a mill site used for ordinary mining pur-
poses, it is not necessary that it be either cultivated or inclosed.

As to effect of warranty deed to prevent grantor from asserting title
by adverse possession subsequently initiated, as against his grantee or
his privies, see note in 25 L. R. A., N. S., 129.

7. The word "improved" as used in said section means to change or make better or to adapt it more to the purposes for which it is intended than had previously been done.

8. *Held,* that the court erred in rejecting certain offered testimony.

APPEAL from the District Court of the First Judicial District for Shoshone County.  Hon. Wm. W. Woods, Judge.

Action in ejectment to recover a portion of a mill site situated in Placer Center Mining District, Shoshone county, and to recover for withholding the same and for the rental thereof. Judgment for plaintiffs.  *Reversed.*

A. H. Featherstone and W. W. Bixby, for Appellant.

The plain and palpable meaning of instruction No. 3 is that (1) defendant's possession and claim must not only have been such as to impute notice to plaintiff of defendant's claim of title, but (2) that defendant must have given actual notice of its claim of title.  All that the law requires is notice, and in no case does the law require both kinds.  Either is sufficient in the case of the grantor claiming adversely to the grantee.  (*Lord v. Sawyer,* 57 Cal. 65; 3 Washburn on Real Property, 88; *Dorland v. Magilton,* 47 Cal. 485; *Franklin v. Dorland,* 28 Cal. 175, 87 Am. Dec. 111; *Hartman v. Reed,* 50 Cal. 485; *Mannix v. Riordan,* 75 App. Div. 135, 77 N. Y. Supp. 357; *Sherman v. Kane,* 86 N. Y. 57; *Dickey v. Forrester* (Tex. Civ.), 148 S. W. 1181.)

The relation of grantor may be denied by retaining actual possession and exercising acts of control and dominion over the property, consistent only with a claim of exclusive ownership and of adverse right, and hostile to the title of the grantee.  (*Knight v. Knight,* 178 Ill. 553, 53 N. E. 306; *Folley v. Thomas,* 46 Ind. App. 559, 93 N. E. 181; *Batz v. Woerpel,* 113 Wis. 442, 89 N. W. 516.)

As to what "improvement" means under sec. 4043, Rev. Codes, see *Gray v. Walker,* 157 Cal. 381, 108 Pac. 278; *Daniels v. Gualala Mill Co.,* 77 Cal. 300, 19 Pac. 519.

The word ''improve'' means ''to make better,'' ''to increase the value or good qualities of.'' (*Dougherty v. Taylor etc. Co.*, 5 Ga. App. 773, 63 S. E. 928; *Brown v. Brown*, 18 Ida. 345, 110 Pac. 269; *Meyer v. City Street Imp. Co.*, 164 Cal. 645, 130 Pac. 215; *A. Leschen & Sons Rope Co. v. Moser* (Tex. Civ.), 159 S. W. 1018.)

Franklin Pfirman, for Respondents.

The jury was told by instruction No. 7 that notice need not be actual, and appellant's argument, based on the assumption that instruction No. 3 called for actual notice, falls to the ground. The instruction criticised states the law correctly. (1 Cyc. 1039; Cyc. Ann. for 1913, p. 70.)

A clear, positive and continued disclaimer and disavowal of the title, and assertion of an adverse right, to be brought home to the party, are indispensable before any foundation can be laid for the operation of the statute. (*Zeller v. Eckert*, 4 How. (45 U. S.) 289, 11 L. ed. 979; *Fountain v. Lewiston Nat. Bank*, 11 Ida. 451, 469, 83 Pac. 505; *Brown v. Brown*, 18 Ida. 345, 110 Pac. 269.)

SULLIVAN, C. J.—This is an action in ejectment to recover possession of about one-eighth of an acre of land, it being a part of the original Granite State mill site, situated in Placer Center Mining District, Shoshone county, and also to recover the sum of $500 damages for the alleged withholding of said premises, and also for the sum of $600, the alleged value of the rents, issues and profits of said tract of land.

The defendant denies the material allegations of the complaint and as a further answer pleads that this action is barred by the provisions of secs. 4036 and 4037, Rev. Codes, and pleads title to said tract of land by adverse possession.

The cause was tried by the court with a jury and the jury found by its verdict that the plaintiff Estelle Trask was the owner in fee simple of said premises, and assessed her damages in the sum of one dollar, and judgment was entered on said verdict. This appeal is from the judgment.

Several errors are assigned, going to the action of the court in giving certain instructions and refusing to give others, and also in admitting and refusing to admit certain evidence offered on the trial.

The first error assigned is that the court erred in giving instruction No. 3 offered by the plaintiff. That part of said instruction particularly objected to is as follows:

" . . . . unless you believe from the evidence that the defendant made an explicit disclaimer of any holding under said plaintiff and made a notorious assertion of right in itself. Nothing less than such an explicit disclaimer and notorious assertion of right by the defendant will be enough to change the character of defendant's possession and to make its holding adverse to the plaintiff Estelle Trask."

Counsel contends that the plain and palpable meaning of that instruction is, first, that the defendant's possession and claim must not only have been such as to impute notice to plaintiff of defendant's claim of title, but that defendant must have given actual notice of its claim of title, and argues that all that the law requires in such a case as the one at bar is notice, and that in no case does the law require both kinds of notice; that either is sufficient in the case of the grantor claiming adversely to the grantee.

We do not think counsel's construction of the meaning of that instruction is borne out by the language used therein. In 1 Cyc., at p. 1039, the author discusses the character of possession as affected by relationship or situation of parties toward each other, and states the rule as follows:

"By the execution and delivery of a deed of land the entire legal title in the premises vests in the grantee, and if the grantor continues in possession afterward his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee, and nothing short of an explicit disclaimer of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession and render it adverse to the grantee."

The author there cites a great number of authorities from many different states in support of the rule there laid down.

In the case at bar, the Success Mining Company, the defendant, had conveyed this identical real estate to the plaintiff, and that being true, if it remained in possession of the land conveyed, or a part of it, under the rule above stated, it will be regarded as holding the premises in subserviency to the grantee, and nothing short of an explicit disclaimer of such relation or a notorious assertion of right in itself would be sufficient to change the character of its possession and render it adverse to the grantee. By holding that an explicit disclaimer or a notorious assertion of right is necessary, we do not mean to hold that defendant's possession and claim must not only have been such as to impute notice, but in addition to that the defendant must have given actual notice of its claim of title. Either is sufficient. If the acts of defendant in regard to said property were sufficient to give the plaintiff notice that the defendant was claiming title to said property adversely to the plaintiff, that is sufficient. We do not think that counsel's construction of the meaning of said instruction is borne out by the language therein used.

This rule seems to be supported by the decided weight of authority, as indicated by 1 Cyc., p. 1039, and cases there cited, and 1913 Cyc. Ann., p. 71. The court therefore did not err in giving said instruction.

The next contention of appellant is that said instruction No. 3 conflicts with instruction No. 7 requested by the plaintiff and given by the court.

Since holding that the court did not err in giving instruction No. 3 when construed as above, it does not, in our view of the matter, conflict in any way with instruction No. 7. Upon the question of notice, said instruction No. 7 informs the jury that the defendant must show by a preponderance of the evidence that the true owner had actual knowledge of defendant's hostile claim, or that the possession of the defendant was so open, visible and notorious as to raise a presumption of notice to the world that the right of the true owner was invaded intentionally and with a purpose of assert-

ing a claim of title adverse to such owner. We think this instruction substantially states the rule to the effect that any notice, actual, constructive or otherwise, is sufficient that will apprise the owner of the adverse holding of the claimant, and in such a case as this, where acts of ownership have been done upon the land which from their very nature indicate a claim of property in the land, which acts are continued sufficiently long with a knowledge of the owner, without interruption or adverse claim by him, such acts are clearly evidence of an ouster of the former owner and an actual adverse possession against him.

Counsel next contends that it was error for the court to give instruction No. 5 and that it also erred in refusing to give requested instruction No. 7a offered by the defendant. Since these two instructions refer to what improvements are necessary to acquire title by adverse possession, we will consider them together.

By instruction No. 5 the jury is instructed that the payment of taxes by the defendant does not constitute adverse possession, and the depositing of machinery or piling of lumber or stulls upon the land, of filling in the land or depositing tailings or other debris on it, or cribbing the stream, or doing work on the public road crossing the land, or crossing the land with a buried pipe-line, do not constitute adverse possession of the land; that such acts are not sufficient in the way of improvements to support defendant's claim to the benefit of the statute of limitations.

It was clearly error to give said instruction.

Instruction No. 7a, which was refused by the court, is as follows:

"The court instructs the jury in this case that the section of our code under which the defendant, Success Mining Company, Limited, claims title to the land in controversy is numbered 4043, and it reads as follows:

" 'Sec. 4043. For the purpose of constituting an adverse possession, by a person claiming title not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only:

" '1. Where it has been protected by a substantial inclosure;

" '2. Where it has been usually cultivated or improved.

" '*Provided, however,* that in no case shall adverse possession be considered established under the provisions of any sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon such land according to law.'

"You are further instructed that the defendant claims title on the ground that it has improved the said land in a manner, degree and to an extent as is usual in this county wherein is situate like and similar property devoted to the same or similar uses.  The term *'improvement'* is one of indeterminate and varying significance, dependent upon the thing to which it is applied.  Generally speaking, it means a physical addition to and betterment of such land, so as to make it the better to subserve human wants and economic requirements. Whether or not a thing added and done to land constitutes an improvement depends upon the location of the land, the purposes to which it is devoted, and whether or not, by the work done and the addition made to the land, the adaptability of the thing attached to the land or whether the land so altered or changed is bettered and improved in condition to the extent and in the way that is usual in like lands used in like situations in like communities.  Each case rests and depends upon its own particular facts, circumstances and conditions.

"Now, in this case, if you believe from a preponderance of the evidence that the defendant, Success Mining Company, Limited, entered into the possession of the lands in controversy, that at said time the stream in question extended over a territory, now in part covered by the public road, that it built the said road over and across said lands or a part thereof or adjacent thereto, that it put a pipe-line through said lands or a part thereof, that it cribbed up the said stream on either side or both sides and confined the waters thereof

to a smaller channel, that it bridged the new channel, that it hauled and filled the land with earth or tailings between the said channel as so made, if any, and the road as so built, if any, to a depth of several feet, and likewise filled said land on the opposite side, that it kept constant possession thereof, stored lumber and machinery thereon and used the said land as a necessary adjunct to its mining operations, and that it did these things and each and all of them for more than five years immediately prior to the commencement of this action, then you are further instructed that such work or use, additions and alterations, if such there were, made and constituted an improvement, as that term is used in our code.''

The court erred in refusing to give said instruction No. 7a, as requested by appellant, since it states the law applicable to the facts of this case.

It must be borne in mind that the land in controversy was a portion of land entered as a mill site, and its occupancy and improvement must be such as is usually had and placed upon a mill site in mining and milling operations, and the improvements referred to in sec. 4043, Rev. Codes, must necessarily vary according to the character of the land, its location, the uses to which it is usually put and all the circumstances bearing on that question. That there must be the usual improvement when improvement is relied upon, is a matter of law. What is such an improvement is a matter of fact. The actual occupancy of land need only be such continuous, exclusive and hostile use as in the judgment of the jury, under all of the circumstances, is sufficient to notify the true owner, *actually or constructively,* of the invasion of his rights and the adverse intent to claim the same by the occupant.

In the case of *Illinois Steel Co. v. Bilot,* 109 Wis. 418, 83 Am. St. 905, 84 N. W. 855, 85 N. W. 402, referring to the question of inclosure and improvement, the court said:

''No particular kind of inclosure is requisite. It may be artificial in part and natural in part. Nor is any particular kind of an improvement required, so long as it satisfies what is usual under the circumstances and indicates clearly the

boundaries of the adverse occupancy. . . . . There is no dif-
ference between the statutory requisites of such an adverse
possession and the common-law rule. The former is but a
fair declaration of the latter. . . . . The boundaries may be
artificial in part and natural in part if the circumstances are
such as to clearly indicate that the inclosure, partly artificial
and partly natural, marks the boundaries of the adverse
occupancy. . . . . The term 'improvement in the usual way'
as used in the statute means put to the exclusive use of the
occupant, as the true owner might in the usual course of
events.''

The court in that opinion cites with approval the case of
*Ewing v. Burnet,* 11 Pet. (36 U. S.) 41, 9 L. ed. 624, where
the following language is used:

''It is well settled that to constitute an adverse possession
there need not be a fence, building or other improvement
made (*Ellicott v. Pearl,* 10 Pet. (35 U. S.) 412, 442, 9 L. ed.
475, 488) ; it suffices for this purpose that visible and notori-
ous acts of ownership are exercised over the premises in
controversy for twenty-one years after an entry under claim
and color of title. So much depends on the nature and situa-
tion of the property, the uses to which it can be applied, or
to which the owner or claimant may choose to apply it, that
it is difficult to lay down any precise rule adapted to all
cases. But it may with safety be said that where acts of
ownership have been done upon land which, from their
nature, indicate a notorious claim of property in it, and are
continued twenty-one years with the knowledge of an adverse
claimant without interruption, or an adverse entry by him,
for twenty-one years; such acts are evidence of an ouster of
a former owner, and an actual adverse possession against him,
if the jury shall think that the property was not susceptible
of a more strict or definite possession than had been so taken
and held. Neither actual occupation, cultivation, or residence
are necessary to constitute actual possession (*Barclay v.
Howell,* 6 Pet. (31 U. S.) 498, 513, 8 L. ed. 477, 483), when
the property is so situated as not to admit of any permanent
useful improvement, and the continued claim of the party

has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim.''

There is very respectable authority holding that if a person takes possession of land under a mistake as to the true boundary line, believing it to be his own, claiming title to it, and so holding, the holding is adverse, and if continued for the requisite period of time, will give title by possession. (1 Cyc. 1038; *Bayhouse v. Urquides,* 17 Ida. 286, 105 Pac. 1066.)

In *Gray v. Walker,* 157 Cal. 381, 108 Pac. 278, 279, the court had under consideration the question as to what elements were necessary to constitute adverse possession under sec. 325 of the Code of Civ. Proc. of that state, which section is substantially the same as our sec. 4043, and in that opinion the court said: ''The requirements of the statute that the land be 'usually cultivated or improved' means that it should be cultivated or improved in the manner or to the extent usual in the case of similar property [citing authorities]. If so improved, it is not necessary that it should be either cultivated or inclosed.'' (Citing *Daniels v. Gualala Mill Co.,* 77 Cal. 300, 19 Pac. 519.)

The word ''improve'' as used in said section means to change or make better, or to adapt it better to the purpose for which it is intended. It has been held that the grading of a street is an improvement; that a tramway passing over land is an improvement.

The record shows that when the defendant took possession of the land in controversy in 1905, the land in question lay in the bottom of a gulch covered with stumps, logs, boulders and debris. The stream flowed through and around and over all of the land except the main channel thereof, which flowed on the west side next and adjacent to the mountain where the road now is. Defendant cribbed the stream to a height of from three to eight feet, filled it in with tailings and other material, built bridges across the stream, built a road, ran a water-pipe through the land, used the land for storing machinery, lumber, stulls, etc., and, in fact, used it as a necessary

adjunct to its milling and mining operations, and the testimony shows that such work was done upon, and additions made to, the land. It is clear that the use to which the land was put by the defendant was the ordinary method of using and improving such a piece of ground for a mill site.

It is next contended that the court erred in sustaining objections to certain questions propounded to the witness C. C. Samuels, whereby it was sought to elicit (1) the value of the work and labor done in changing the channel, and on the land in controversy; (2) the value of the cribbing material and the instalation of the pipe-line; (3) the value of the work done by the defendant on the road over the land in controversy and adjacent thereto.

We think the court erred in rejecting that testimony. The question of the value of the labor performed, the materials furnished and of the changes made on the land claimed to have been held adversely all tend to show whether the product of both labor and materials constitute an improvement, showing the good faith of the claimant and as showing whether the alleged improvement is such as would place the land in a better condition for milling and mining purposes.

It is next contended that instruction No. 7 is misleading, in that the jury are instructed in one place that the defendant must show certain matters "by clear and satisfactory evidence," and in another that such facts must be shown "by a preponderance of the evidence." The general rule in civil cases is that in order to recover the party must prove the principal allegations of his complaint by a preponderance of evidence; while in some of the adjudicated cases involving title by adverse possession courts have stated that the evidence should be clear and satisfactory. That expression perhaps is a little stronger than "preponderance," but we are satisfied in this class of cases the evidence ought to be clear and satisfactory, and that the court did not err in using that term in said instruction.

Since it was the province of the jury to pass upon the evidence introduced on the trial upon proper instructions to be given by the court, we make no comment whatever upon the

sufficiency of the evidence; but since the court has erred in giving and refusing to give the certain instructions above referred to, the judgment must be reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion. Costs are awarded to the appellant.

Budge and Morgan, JJ., concur.