Filed 6/12/20; Certified for publication 7/7/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WFG NATIONAL TITLE INSURANCE COMPANY, | B294249 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC640157 |
| v. | |
| WELLS FARGO BANK, N.A., as Trustee, for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCW2, et al., | |
| Defendants and Respondents. | |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Elizabeth J. Feffer, Judge. Affirmed.
　　　　Hershorin & Henry, Lori C. Hershorin and Claudia Mourad for Plaintiff and Appellant.
　　　　Wargo & French, Mark L. Block, Shanon McGinnis and Jeffrey N. Williams for Defendants and Respondents.

# INTRODUCTION

This matter arises out of an alleged mortgage fraud scheme designed to defraud mortgage lenders and involving numerous realtors, loan brokers, loan officers, and real estate brokers. One defrauded lender is Milestone Financial d/b/a Alviso Funding (Alviso), the original plaintiff in this case.

The operative complaint alleges that various defendants set up a sham transaction by which a seller purported to sell a property in Sherman Oaks (property) to a buyer who obtained a mortgage loan from Alviso to fund the purchase. As it turned out, the seller did not own the property because the recorded trustee's deed upon sale that appeared to convey title to the seller was forged. When the buyer subsequently defaulted on the mortgage loan, Alviso was left holding the proverbial bag because its deed of trust, purportedly secured by the property, is predicated on the forged trustee's deed upon sale.

Alviso sued numerous parties allegedly involved in the sham transaction and, as pertinent here, the senior lienholder on the property, defendants and respondents Wells Fargo Bank, N.A.,[1] and its loan servicer, Select Portfolio Servicing (collectively, Wells Fargo). The title insurer involved in the sham transaction, plaintiff and appellant WFG National Title Insurance Company (plaintiff or WFG Title), is Alviso's successor-in-interest and is now prosecuting the action.

Essentially, plaintiff contends that Wells Fargo—the beneficiary of an indisputably valid deed of trust recorded well

---

[1] Wells Fargo, N.A., was sued in its capacity as trustee for Park Place Securities, Inc. Asset-Backed Pass-Through Certificates, Series 2005-WCW2.

before the forged deed was recorded—was required to immediately discover the forged deed and promptly record a rescission of it in order to protect unknown third parties such as Alviso from the possibility of being defrauded. Because Wells Fargo failed to do so, plaintiff argues, principles of equity demand that Alviso's interest in the property should be senior to Wells Fargo's.

Wells Fargo moved for summary judgment, asserting it had no legal obligation to monitor the status of its title or to take affirmative steps to rid public records of improperly recorded documents relating to the property. The court agreed with Wells Fargo, finding that it had no legal obligation to maintain public title records and further finding that equity did not justify displacing Wells Fargo as senior lienholder. The court granted Wells Fargo's motion for summary judgment and we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Status Quo Prior to the Sham Transaction

The property is located at 4050 Camino de la Cumbre in Sherman Oaks. In 2005, Jubilio Escalera and Jose Alonzo (the borrowers) obtained a mortgage loan from Argent Mortgage Company (Argent) in the amount of $710,460. The promissory note was secured by a deed of trust on the property in favor of Argent. In 2012, an assignment of that deed of trust was recorded, showing that Argent's interest in the deed of trust had been transferred to Wells Fargo.[2] (We refer to this instrument as Wells Fargo's deed of trust.)

---

[2] The loan is serviced by Select Portfolio Servicing.

The borrowers defaulted on the loan. In December 2014, Wells Fargo's foreclosure trustee, Quality Loan Service Corporation (Quality), recorded a notice of default and election to sell under deed of trust. Quality subsequently recorded a notice of trustee's sale on February 3, 2016, setting the date of the foreclosure sale on February 26, 2016. Apparently, no sale took place on that date because Quality recorded a second notice of trustee's sale on April 4, 2016, setting the date of sale on April 26, 2016. No sale took place, however.

## 2. The Sham Transaction

Although the property had not been sold by the foreclosure trustee on April 26, 2016, a trustee's deed upon sale was recorded on July 8, 2016, i.e., the forged deed. The forged deed appeared to have been recorded by Quality and it represented that on June 8, 2016, defendant Adeliya Timirova Investments (ATI) purchased the property at the trustee's foreclosure sale, purportedly extinguishing Wells Fargo's deed of trust.

A number of other defendants allegedly participated in the next phase of the scheme—the sale of the property from ATI to Tatiana Vovk, also a named defendant. The preliminary title report indicated, by way of the forged deed, that title was vested in ATI. Relying on representations by various defendants, Alviso agreed to loan Vovk $850,000 in exchange for a first deed of trust on the property. Meanwhile, on August 2, 2016, Quality recorded another notice of trustee's sale, setting a sale date of August 25, 2016. This document was not discovered by Alviso or WFG Title prior to the close of escrow.

The loan funded and escrow for the sham purchase of the property by Vovk closed on October 7, 2016. A deed of trust in

4

favor of Alviso (Alviso's deed of trust) was duly recorded on the same date. No payments on the loan were ever made, however.

Alviso first became aware that the Vovk transaction might be fraudulent after WFG Title was contacted by the Los Angeles Police Department in late October 2016. Wells Fargo filed a notice of rescission of the forged deed on November 16, 2016.

### 3. The Lawsuit and Wells Fargo's Motion for Summary Judgment

In November 2016, Alviso filed the underlying lawsuit against numerous individuals and entities it alleged were involved in the mortgage fraud scheme. It later assigned its claim to WFG Title, which substituted into the lawsuit. (From this point, we refer to WFG Title, to the extent it is standing in the shoes of Alviso, as "plaintiff.") As pertinent here, plaintiff sought to quiet title to the property in itself as against Wells Fargo and sought declaratory relief to the effect that Alviso's deed of trust is senior to Wells Fargo's deed of trust.

Wells Fargo moved for summary judgment and/or summary adjudication. As to both of plaintiff's claims, Wells Fargo argued that the forged deed, upon which plaintiff based its claim to title, was wholly void. As a matter of law, then, plaintiff failed to obtain any valid interest in the property which could defeat Wells Fargo's indisputably valid interest. Anticipating plaintiff's argument that equitable principles should bar it from asserting its right as a senior lienholder, Wells Fargo also asserted that no law or statute required it to monitor public records regarding the property and/or act to correct public records in the event that a forged deed or other notice was recorded, as plaintiff claimed. Accordingly, Wells Fargo could not, as a matter of law, be equitably estopped from asserting its valid interest in the

5

property. Moreover, Wells Fargo contended, equity should not defeat Wells Fargo's interest because Alviso and WFG Title had constructive notice that the forged deed might be fraudulent by virtue of the trustee's notice of sale recorded on August 2, 2016—which should have put the parties on notice that the forged deed might not be valid—more than two months before escrow closed on the sham transaction.

Plaintiff attacked Wells Fargo's motion on several procedural grounds relating to the admissibility of evidence and correctness of the separate statement. On the merits, and as pertinent here, plaintiff offered three main arguments. First, plaintiff asserted that Wells Fargo should be equitably estopped to claim a superior lien position "after it knowingly allowed the purportedly forged Trustee's Deed Upon Sale of its Deed of Trust to remain in the public record for a period of time resulting in an $850,000 loss to" Alviso. Although plaintiff acknowledged that a forged deed ordinarily does not transfer good title, it claimed that Wells Fargo's "excessive and unreasonable delay" in recording a rescission of the forged deed constituted sufficient grounds to estop Wells Fargo from asserting its senior lien position. Second, plaintiff urged that Wells Fargo's failure to correct public title records in a timely manner constituted a ratification of the forged deed—conduct which would also estop Wells Fargo from claiming a senior lien position. Third, plaintiff argued that under Civil Code section 3543,[3] Wells Fargo's "complete disregard … that innocent third parties, like WFG [Title and Alviso], would rely on

---

[3] That statute states: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

the status of the Property's title in making decisions whether to lend money secured by the Property," demanded that plaintiff's interest in the property should be given the senior position.

4.      **The Court's Ruling and the Appeal**

The court found in favor of Wells Fargo on both the quiet title and declaratory relief claims. The court first addressed, and largely rejected, plaintiff's procedural arguments regarding alleged deficiencies in Wells Fargo's motion for summary judgment and supporting documents.[4]

On the merits of plaintiff's claims, the court first addressed the validity of plaintiff's interest in the property. The court noted, as Wells Fargo had argued, that as a matter of law, a forged deed is void ab initio and cannot provide a basis for superior title against a prior, valid interest in real property. And a void instrument infects the entire chain of title, such that any subsequent conveyance stemming from the void instrument is also void as a matter of law. In a straightforward application of that well-settled law, the court concluded that Alviso's deed of trust was void as a matter of law because it related to ATI's conveyance to Vovk, which in turn flowed from the void, forged deed purporting to convey title to ATI. No triable issue of fact existed that would support a different conclusion.

As to plaintiff's equitable arguments, the court made several observations. First, with respect to the doctrine of equitable estoppel generally, a party will not be estopped in the absence of some action or inaction on their part amounting to

---

[4] To the extent plaintiff's procedural challenges are relevant to the appeal, we address them *post*.

7

constructive fraud. Here, the court concluded, Wells Fargo was under no obligation to discover forged documents relating to the property and, thus, its action or inaction on that point could not form the basis of an estoppel. Further, the court concluded, plaintiff had constructive notice that the forged deed might be fraudulent more than two months before escrow closed on the sale of the property to Vovk by virtue of the August 2, 2016 notice of trustee's sale. Given those facts, the court concluded no triable issue of fact sufficient to permit an estoppel existed.

Finally, and as to plaintiff's argument that Civil Code section 3543 required Wells Fargo to suffer any loss resulting from the fraud, the court reiterated that the code section requires a finding of negligence. Here, however, Wells Fargo owed no duty to either Alvsio or WFG Title—or, indeed, to any third party—to monitor public records for potentially fraudulent documents. As a result, plaintiff would be unable to establish that Wells Fargo was negligent—a necessary prerequisite to application of the statute.

The court granted Wells Fargo's motion for summary judgment and entered judgment accordingly on October 25, 2018. Plaintiff timely appeals.

## DISCUSSION

### 1. Standard of Review

The applicable standard of review of a ruling on a motion for summary judgment is well established. "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25

Cal.4th 826, 843 (*Aguilar*).) As such, the summary judgment statute (Code Civ. Proc., § 437c),[5] "provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense]." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203.) A summary judgment motion must demonstrate that "material facts" are undisputed. (§ 437c, subd. (b)(1).) The pleadings determine the issues to be addressed by a summary judgment motion. (*Metromedia, Inc. v. City of San Diego* (1980) 26 Cal.3d 848, 885, reversed on other grounds by *Metromedia, Inc. v. City of San Diego* (1981) 453 U.S. 490; *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850.) A defendant moving for summary judgment must " 'show[ ] that one or more elements of the cause of action ... cannot be established' by the plaintiff. [Citation.]" (*Id.* at p. 853.) A defendant meets its burden by presenting affirmative evidence that negates an essential element of a plaintiff's claim. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) Alternatively, a defendant meets its burden by submitting evidence "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" supporting an essential element of its claim. (*Aguilar*, at p. 855.)

On appeal from a summary judgment, we review the record de novo and independently determine whether triable issues of

---

[5] All undesignated statutory references are to the Code of Civil Procedure.

material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Guz, supra*, 24 Cal.4th at p. 334.) We resolve any evidentiary doubts or ambiguities in favor of the party opposing summary judgment. (*Saelzler*, at p. 768.)

In performing an independent review of the granting of summary judgment, we conduct the same procedure employed by the trial court. We examine (1) the pleadings to determine the elements of the claim, (2) the motion to determine if it establishes facts justifying judgment in the moving party's favor, and (3) the opposition—assuming movant has met its initial burden—to decide whether the opposing party has demonstrated the existence of a triable, material fact issue. (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 629–630.) We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale. (*Id.* at p. 630.)

2. **The court properly granted Wells Fargo's motion for summary judgment.**

Plaintiff argues the court erred in granting summary judgment in favor of Wells Fargo on its declaratory relief and quiet title claims. As to both claims, plaintiff sought a judicial declaration that Alviso's deed of trust is senior to Wells Fargo's deed of trust.

Primarily, plaintiff asserts that the court erred as a matter of law in concluding that Alviso's deed of trust is void. Alternatively, plaintiff contends triable issues of material fact exist regarding Wells Fargo's conduct vis a vis the forged deed, such that a court sitting in equity could displace Wells Fargo's deed of trust and place Alviso's deed of trust in the senior position. We address these issues in turn.

### 2.1. A fraudulent or forged deed does not convey valid title.

Plaintiff asserts the court erred as a matter of law in finding that Alviso's deed of trust is void as against Wells Fargo. We disagree.

The parties agree that the trustee's deed upon sale recorded on July 8, 2016 purporting to convey the property to ATI (i.e., the forged deed) was not recorded by Quality, as it appears from the face of the deed. The deed is forged and therefore void rather than voidable. (*Schiavon v. Arnaudo Brothers* (2000) 84 Cal.App.4th 374, 378 ["A deed is void if the grantor's signature is forged"]; 3 Miller & Starr, Cal. Real Estate (4th ed. 2019) § 8:52, p. 8-152 ["A forged deed is completely void and ineffective to transfer any title to the grantee"].)

Further, "[a] subsequent title derived through a forged instrument is completely unenforceable, even if recorded and held by a bona fide purchaser, unless the grantor is estopped to assert that the deed is invalid." (3 Miller & Starr, *supra*, § 8:52, at pp. 8-152–8-153, fns. omitted; see *Erickson v. Bohne* (1955) 130 Cal.App.2d 553, 557 [" 'A void deed passes no title and cannot be made the foundation of a good title even under the equitable doctrine of bona fide purchase' "].) These principles apply to purchasers as well as encumbrancers such as Alviso and Wells Fargo.[6] (See, e.g., *Triple A Management Co. v. Frisone* (1999) 69

---

[6] In limited circumstances, a senior lienholder may be estopped to assert that a bona fide purchaser's (or good faith encumbrancer's) interest in real property is void. We discuss this issue in the next section.

Cal.App.4th 520, 530–533 [explaining good faith encumbrancer is similar to bona fide purchaser].)

Alviso's deed of trust is derived from the forged deed. The forged deed purported to convey title to ATI which, in turn, purported to sell the property to Vovk, Alviso's borrower. Because the entire transaction was fraudulent and predicated on the forged deed, Vovk did not obtain a valid interest in the property. Accordingly, neither did Alviso.

Plaintiff claims the court misread and misinterpreted *Wutzke v. Bill Reid Painting Service* (1984) 151 Cal.App.3d 36 (*Wutzke*),[7] a case relating to the effect of a forged deed of reconveyance on a subsequent encumbrancer. In *Wutzke* , the plaintiff sold property to the Millers and took back a promissory note and a deed of trust. Unbeknownst to the plaintiff, the trustee designated by the Millers was an escrow company owned by the Millers themselves. (*Id*. at p. 39.) One of the Millers later executed and recorded a deed of reconveyance eliminating the plaintiff's security interest in the property. The reconveyance falsely represented that the trustee had received a written request to reconvey from the trustor (the plaintiff) and that all sums secured by the deed of trust had been paid. The Millers signed the reconveyance with the fictitious names of the executive officer of the escrow company and a notary. Having cleared the property of debt, the Millers then borrowed money from a third party, who knew nothing of the fraud, and executed a promissory note secured by a new first deed of trust on the property. (*Ibid*.)

---

[7] Plaintiff's reply brief erroneously represents that *Wutzke* was decided by the California Supreme Court.

The Millers defaulted on both obligations and the matter came before the court for trial.[8] As between the plaintiff and the third party encumbrancer, the court found that the plaintiff had a superior interest. In that case, the deed of reconveyance itself had been forged with the intent to defraud. The Court of Appeal, in affirming the court's judgment, emphasized that although the law protects innocent purchasers and encumbrancers, "that protection extends only to those who obtained good legal title. [Citations.] ... [A] forged document is void *ab initio* and constitutes a nullity; as such it cannot provide the basis for a superior title as against the original grantor. [Citations.]" (*Wutzke, supra*, 151 Cal.App.3d at p. 43.) The court ordered a foreclosure sale and a distribution of the proceeds to the plaintiff and, to the extent any excess proceeds existed, to the encumbrancer. (*Id.* at p. 45.)

Plaintiff contends that because the court in *Wutzke* determined that the encumbrancer held a junior lien on the property, the court in this case erred in finding that Alviso's deed is void. Instead, plaintiff urges, the court should have ruled that Alviso holds a second deed of trust on the property. *Wutzke* is distinguishable. There, the court determined that the encumbrancer's deed was void as against the senior lienholder and therefore the encumbrancer could not displace the senior lienholder. On that point, *Wutzke* supports the court's ruling in this case. But in *Wutzke*, the court was also required to allocate the proceeds from the foreclosure sale of the property at issue and, as to that issue, the court considered the relative priority of

[8] The opinion does not specify the causes of action asserted by the plaintiff.

13

the two interests. Here, however, the court was not asked to allocate sale proceeds, nor was there a need for it to determine the parties' relative priority in the event proceeds become available at some future point. That second issue simply is not present here[9] and therefore *Wutzke*'s resolution of that point is not applicable.

### 2.2. Because Wells Fargo was not negligent, neither equitable estoppel nor Civil Code section 3543 is applicable.

Plaintiff makes a variety of arguments generally asserting that Wells Fargo was negligent because it failed to detect the forged deed and act immediately to rescind it in order to prevent any third parties, such as plaintiff, from relying on it. As a result, plaintiff asserts, Civil Code section 3543 and/or equitable estoppel should prevent Wells Fargo from disputing the superiority of Alviso's deed of trust. Plaintiff contends that triable issues of fact exist regarding Wells Fargo's knowledge of the forged deed and its failure to take action to clarify the public records relating to the property.

Plaintiff again relies on *Wutzke*, which provides a helpful starting point for our discussion. "It is settled that the doctrine of equitable estoppel 'may be invoked by an innocent purchaser, in

---

[9] Plaintiff sought to establish that its interest is senior to Wells Fargo's. In the prayer for relief in the operative complaint, plaintiff requested "a judicial declaration that [Alviso's deed of trust] occupies a first lien against the PROPERTY" and, as to the quiet title claim, it requested "a judgment of the Court quieting title to [Alviso's deed of trust], adjudging that [Alviso's deed of trust] occupies a senior lien position against the PROPERTY as of October 7, 2016 and the [Wells Fargo deed of trust] is in a junior lien position."

spite of the fact that ordinarily a forged instrument cannot carry title. " 'The owner of property cannot be divested thereof by a forged instrument, but his conduct ... may estop him from denying its validity.' [Citation.]" (*Crittenden v. McCloud* (1951) 106 Cal.App.2d 42, 50; see also *Common Wealth Ins. Systems, Inc. v. Kersten* (1974) 40 Cal.App.3d 1014, 1025.) The principle of estoppel is based on Civil Code section 3543, which provides that " '[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer.' " (*Wutzke, supra*, 151 Cal.App.3d at pp. 44–45.)

Plaintiff overstates the significance of these principles, claiming that "California Courts apply the basic principle that the person with the best chance of preventing the loss must suffer the consequences." That is not the law. In order to invoke equitable estoppel generally or Civil Code section 3543 in particular, it must be established that the party to bear the loss was, at a minimum, negligent. Civil Code section 3543 expressly requires a finding of negligence, specifying that "he, by whose negligence it happened, must be the sufferer." And myriad cases have required a finding of negligence before applying equitable estoppel. (E.g., *Wutkze, supra*, 151 Cal.App.3d at pp. 44–45 [holding no basis for estoppel existed where plaintiff was not negligent]; *Crittenden v. McCloud, supra,* 106 Cal.App.2d at p. 50 [quoting *Trout v. Taylor* (1934) 220 Cal. 652 as holding that " '[a]n innocent purchaser taking a void instrument can, however, find protection in the doctrine of estoppel, where circumstances are presented which establish negligence or some other misconduct by the other party, which contributed to the loss' "];

15

see also 3 Miller & Starr, *supra*, §§ 7.54, 8.52.) None of the cases cited by plaintiff hold otherwise.[10]

In order to prove negligence, plaintiff must establish duty, breach of that duty, causation, and damages. (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618 (*Regents*).) " 'Duty, being a question of law, is particularly amenable to resolution by summary judgment.' [Citation.]" (*Ibid*.) Plaintiff urges that Wells Fargo was negligent because it failed to take immediate action to correct the public records after the forged deed was recorded or, at a minimum, after Wells Fargo had actual knowledge of the forged deed. Wells Fargo responds that it did not owe anyone, including plaintiff, a duty to monitor and correct public records relating to the property.

Notably, plaintiff cites no statute or case stating that a property owner or beneficiary of an interest in property has an ongoing duty to monitor public records in order to detect, and correct, a fraudulent or erroneous recording. As a general matter, though, "each person has a duty to act with reasonable care under the circumstances. [Citations.] However, 'one owes no duty

---

[10] *Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, cited by plaintiff , confirmed that negligence is a necessary prerequisite to the application of Civil Code section 3543. (*Id*. at p. 1752 [" ' "It has been held that although the true owner is guilty of no more than misplaced confidence, such misplaced confidence is negligence within the meaning of section 3543" ' "].) *Andrade v. Casteel* (1947) 81 Cal.App.2d 729, is in accord: " 'Where, as here, the true owner permits another to appear as the owner of the property or as having full power of disposition over it, it is established that an innocent third party who is thus led into dealing with the apparent owner will be protected by a court of equity against the claims of the true owner whose conduct made the fraud possible.' " (*Id*. at p. 732.)

to control the conduct of another, nor to warn those endangered by such conduct.' [Citation.] 'A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act.' [Citations.]" (*Regents, supra*, 4 Cal.5th at p. 619.) There is no evidence of a relationship, special or otherwise, between Wells Fargo and plaintiff at the pertinent time.

Consistent with general negligence principles, our Supreme Court held long ago that "a party whose conveyance is duly recorded is not obliged to thereafter keep constant[ ]watch of the records, lest some party, without his consent or authority, should fraudulently or feloniously attempt to convey away his property." (*Meley v. Collins* (1871) 41 Cal. 663, 665 (*Meley*).) Specifically, the Court held that a property owner who knew a forged deed had been recorded as to her property had no duty to monitor title records and, so long as the deed was not authorized or sanctioned by the property owner, she would not be estopped to assert her valid interest as against a party deceived by the forged deed. (*Id.* at p. 666.) In short, the Court rejected the precise argument advanced by plaintiff here.

Plaintiff responds that "[t]he Trial Court's reliance on the case of *Meley v. Collins* (1871) 41 Cal. 663 for the proposition that estoppel does not apply to lenders is misguided and misplaced." But the court did not do so. Rather, it concluded that estoppel does not apply to Wells Fargo because it had no duty to protect plaintiff from the consequence of relying on a forged deed.

In any event, plaintiff asserts, "[s]ubsequent to *Meley* and the enactment of California Civil Code section 3543, numerous cases hold that homeowners/lenders are precluded from attacking

17

the title of bona fide purchasers/encumbrancers, like [plaintiff], based upon a forged deed where there is sufficient evidence of carelessness or negligence on the part of the lender/homeowner." We agree. But we take issue with plaintiff's subsequent assertion—unsupported by any legal citation—that "[t]he law imposes a duty upon lenders to protect their own interests to avoid loss, and if they fail to do so, suffer the consequences of their own inaction." To the extent plaintiff suggests Wells Fargo had a duty to monitor and correct public records regarding the property, it is incorrect.

Plaintiff also appears to suggest that we should disregard *Meley* because the case was decided in 1871. Plaintiff apparently contends that *Meley* is obsolete because "vehicles, modern technology, and the internet … make recording documents fast and simple, and monitoring the title to property [is] easy for lenders," as contrasted with the circumstances in existence when *Meley* was decided, i.e., days of the "horse and carriage." The age of an opinion does not constitute a valid ground to disregard it. (See *Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.)

### 2.3. Plaintiff's remaining arguments are forfeited.

To prevail on appeal, an appellant must establish both error and prejudice from that error. (*Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 740.) In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 & fn. 16; Cal. Rules

of Court, rule 8.204(a)(1)(C).) Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287; *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1; Cal. Rules of Court, rule 8.204(a)(1)(B).) These principles apply to several of plaintiff's arguments.

In argument section C of the opening brief, for example, plaintiff argues the court abused its discretion by overruling its objections to a declaration submitted in support of Wells Fargo's motion for summary judgment. The argument section, which is just over one page in length, does not include any record citations or legal analysis. By failing to support the factual assertions in its legal argument with citations to the evidence, plaintiff has forfeited the argument.

Similarly, plaintiff asserts at several points in the opening brief that Wells Fargo had actual knowledge of the forged deed and deviated from its normal practice by failing to timely file a rescission or cancellation of the deed. Even if these purported facts were relevant, which they are not, plaintiff failed to include record citations in its discussion of these facts and any related argument is likewise forfeited.[11]

And in Argument section K, plaintiff asserts the court abused its discretion by permitting Wells Fargo to proceed with

---

[11] The obvious explanation for this significant omission is that the appellate record does not include the compendium of evidence plaintiff submitted in opposition to Wells Fargo's motion for summary judgment and/or adjudication. Instead, the record includes a compendium of evidence plaintiff submitted in response to a motion by a different defendant.

its motion despite defects in its separate statement of undisputed facts. Again, plaintiff fails to include any relevant record citations and has forfeited the argument. We reach the same conclusion with respect to plaintiff's argument that the court should have granted its request for a continuance of Wells Fargo's motion, as the argument is unsupported by either record citations or legal analysis.

## DISPOSITION

The judgment is affirmed. Respondents Wells Fargo Bank, N.A., as Trustee, and Select Portfolio Services shall recover their costs on appeal.

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

DHANIDINA, J.

20

Filed 7/7/20

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| WFG NATIONAL TITLE INSURANCE COMPANY, <br><br>    Plaintiff and Appellant, <br><br>      v. <br><br> WELLS FARGO BANK, N.A., as Trustee, etc., et al., <br><br>    Defendants and Respondents. | B294249 <br><br> Los Angeles County <br> Super. Ct. No. BC640157 <br><br><br> **Order Certifying Opinion for Publication** <br><br> [No change in judgment] |

BY THE COURT:*

     Non-parties California Mortgage Association, Caliber Home Loans, Inc., and Quality Loan Service Corporation have requested that our opinion in the above-entitled matter, filed June 12, 2020, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The opinion is ordered published in the Official Reports.

---

*LAVIN, Acting P. J.      EGERTON, J.      DHANIDINA, J.